DECISION
{¶ 1} Relator, Joseph Niehorster, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order setting his average weekly wage at $36.39 and to enter an order setting it at $473.12 or, in accordance with R.C. 4123.61's special circumstances.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that respondent commission had failed to properly apply R.C. 4123.61's special circumstances provision and that this court should issue a writ of mandamus ordering respondent commission to vacate the September 5, 2002 order of its staff hearing officer to the extent that the average weekly wage was set at $36.39 and, to enter an amended order that properly considered whether there were special circumstances that warranted a different average weekly wage.
 {¶ 3} Respondent commission filed objections to the decision of the magistrate because it argued that relator had failed to raise the issue of special circumstances in the administrative proceedings and had, therefore, waived that argument. However, relator, in response to the objections, argues that although the specific language of R.C. 4123.61
may not have been utilized by relator, the substance of his argument clearly called for application of the special circumstances section of that statute. We agree and accordingly overrule the objections.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the September 5, 2002 order of its staff hearing officer to the extent that relator's average weekly wage was set at $36.39, and to enter an amended order consistent with this decision that properly considers whether there are special circumstances as provided by R.C.4123.61.
Objections overruled; writ of mandamus granted.
 DECISION IN MANDAMUS {¶ 1} In this original action, relator, Joseph Niehorster, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting his average weekly wage ("AWW") at $36.39 and to enter an order setting AWW at $473.12 or in accordance with R.C. 4123.61's special circumstances.
 Findings of Fact: {¶ 2} 1. On January 24, 2000, relator sustained an industrial injury while employed with respondent Cricket Construction LTD. The claim is allowed for: "fracture mid/proximal phalanx-open, second finger, left," and is assigned claim number 00-317037.
 {¶ 3} 2. Relator worked approximately four weeks with Cricket Construction earning a total of $1,892.46 prior to his industrial injury. Relator was unemployed for the remainder of the year prior to the date of injury.
 {¶ 4} 3. On January 29, 2002, relator moved that his AWW be set at $473.12 ($1,892.46 | 4 = $473.12). In support, relator submitted a C-94A affidavit that he executed on January 25, 2002, stating: "From 1-24-99 through 12-21-99 I was unemployed and actively seeking employment. From 12-21-99 through 1-24-00 I was employed by Cricket Construction Company."
 {¶ 5} Relator also moved that his full weekly wage ("FWW") be set at $437.96.
 {¶ 6} 4. On February 6, 2002, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order setting AWW at $413.98. However, the bureau's order failed to set FWW.
 {¶ 7} 5. Relator administratively appealed the bureau's February 6, 2002 order.
 {¶ 8} 6. Following a March 11, 2002 hearing, at which relator was present and testified, a district hearing officer ("DHO") issued an order stating:
 {¶ 9} "It is the order of the District Hearing Officer that the claimant's full weekly wage be set at $437.96 based upon the claimant's earnings in the week prior to the date of injury.
 {¶ 10} "It is further the order of the District Hearing Officer that the claimant's average weekly wage be set at $36.39 based upon $1892.46 divided by 52 weeks. The Hearing Officer denies the claimant's request to exclude 48 weeks from this calculation under ORC 4123.61. The Hearing Officer finds that the claimant has failed to demonstrate special circumstances sufficient to exclude 48 weeks from this calculation. The claimant was not unemployed for reasons beyond his control during that period and he was not actively seeking employment. The claimant testified that he quit his job with `Gutter King' in the summer of 1998 because he did not like the work that he was doing. The Hearing Officer finds that the claimant voluntarily quit this job so his unemployment thereafter was within his control. The claimant further testified that his job search activities after that consisted of going down to the Union Hall about once every two months to look at the job board. The claimant admitted at hearing that during that time he did not apply for a single job at the Union Hall or at any other employer. The Hearing Officer finds that his minimal effort does not constitute an active search for employment.
 {¶ 11} "Previously awarded compensation shall be adjusted accordingly.
 {¶ 12} "This decision is based upon the claimant's wage documentation in file form [sic] the instant employer." (Emphasis sic.)
 {¶ 13} 7. Relator administratively appealed the DHO order of March 11, 2002. Following a September 5, 2002 hearing, a staff hearing officer ("SHO") issued an order stating:
 {¶ 14} "The order of the District Hearing Officer, from the hearing dated 03/11/2002, is affirmed.
 {¶ 15} "The Staff Hearing Officer finds, as did the District Hearing Officer, that the claimant's Motion * * * is granted to the extent of this order.
 {¶ 16} "It is the order of the Staff Hearing Officer that the claimant's Full Weekly Wage is to be set at $437.96 based on the claimant's earnings in the week prior to the date of injury. As found by the District Hearing Officer, the claimant's Average Weekly Wage is to be set at $36.39 based on wages of $1892.46 divided by 52 weeks worked.
 {¶ 17} "The Hearing Officer finds that the claimant has not submitted sufficient probative evidence to exclude 48 weeks from this calculation. The Hearing Officer finds that based on testimony at hearing and also documentation in the file, that the claimant has not sought employment and that the 48 weeks unemployed was beyond his control."
 {¶ 18} 8. On September 28, 2002, another SHO mailed an order refusing relator's administrative appeal.
 {¶ 19} 9. On November 26, 2002, relator, Joseph Niehorster, filed this mandamus action.
 Conclusions of Law: {¶ 20} It is the magistrate's decision that this court issue a writ of mandamus, as explained below.
 {¶ 21} R.C. 4123.61 states in part:
 {¶ 22} "* * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 {¶ 23} "In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants."
 {¶ 24} "Special circumstances" is not defined by the statute, but special circumstances have generally been confined to uncommon situations. State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288. Moreover, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. State ex rel. Cawthorn v. Indus. Comm. (1997), 78 Ohio St.3d 112,115; State ex rel. Clark v. Indus. Comm. (1994), 69 Ohio St.3d 563, 566.
 {¶ 25} AWW is designed to find a fair basis for award of future compensation. State ex rel. Riley v. Indus. Comm. (1983), 9 Ohio App.3d 71,73. The AWW should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury. State ex rel. Erkard v. Indus. Comm. (1988),55 Ohio App.3d 186, 188.
 {¶ 26} In calculating AWW, two considerations dominate. First, the AWW must do substantial justice to the claimant. Second, it should not provide a windfall. Wireman, supra, at 287.
 {¶ 27} In the instant case, the commission used R.C. 4123.61's standard formula in calculating AWW. The commission divided $1,892.46 by the 52 weeks in the year prior to the date of injury and refused to exclude the 48 weeks in which relator admittedly did not work.
 {¶ 28} Clearly, the 48 weeks of unemployment during the year prior to the date of injury were not beyond relator's control as the commission determined. Claimant testified at hearing that during this time he did not apply for a single job at the union hall or at any other employer. Relator's testimony established that the unemployment was indeed not beyond his control.
 {¶ 29} However, the commission's determination that the 48 weeks of unemploy-ment were not beyond relator's control does not end the inquiry as to whether special circumstances exist.
 {¶ 30} Here, the DHO's order which was administratively affirmed strongly suggests that the commission incorrectly treated its determination that the unemploy-ment was not beyond relator's control as the special circumstances inquiry.
 {¶ 31} Riley, supra, is authority for the proposition that voluntary unemployment itself is not grounds to conclude that special circumstances do not exist. In Riley, the claimant had been employed for only three weeks prior to his injury. He had been unemployed for the remainder of the year preceding the injury because, according to his own statement, he was then receiving other income making it unnecessary for him to work.
 {¶ 32} In Riley, the commission upheld an AWW setting that was calculated by dividing claimant's total wages for the three weeks by fifty-two. This court found special circumstances in Riley because the claimant first became employed three weeks before his injury. This court, in Riley, found that dividing total wages for the three weeks by fifty-two creates an unjust AWW.
 {¶ 33} While relator testified at both hearings, we do not have a transcript of his testimony at either hearing. What testimony he gave is known primarily through the DHO's summary. There was apparently much testimony about relator's activities or lack thereof during the 48 weeks of unemployment, but there is no indication as to the nature of relator's employment at Cricket Construction other than the wages earned and the weeks worked. It may very well be that, after the lengthy period of unemployment, relator decided to work a steady job with some future.
 {¶ 34} If relator did not intend to work much beyond the date of his injury, then an AWW of $36.39 would approximate the average amount that relator would have received had he not been injured. On the other hand, if relator intended to begin a career of steady employment at Cricket Construction or at other jobs, then $36.39 is substantially unjust because it does not approximate the average amount that he would have received had he continued working after the injury as he had before the injury. Erkard, supra.
 {¶ 35} The commission's orders here strongly suggest that the commission did not properly apply R.C. 4123.61's special circumstances. The commission's orders strongly suggest that the commission incorrectly believed that a finding of special circumstances is precluded when a period of unemployment is not beyond the claimant's control.
 {¶ 36} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the September 5, 2002 order of its SHO to the extent that AWW is set at $36.39 and, in a manner consistent with this magistrate's decision, enter an amended order that properly considers whether there are special circumstances.