DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Exel Logistics, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that set the average weekly wage of claimant-respondent, Thomas A. Harper, at $347.40, and to issue a new order setting a lower average weekly wage.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be granted to order the commission to issue a new order that meets the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Relator has filed objections to the magistrate's decision.
 {¶ 3} In its objections, relator argues that claimant's incarceration was not a special circumstance and that period of time should have been included in the calculation of his average weekly wage, thus, resulting in a lower amount awarded. Relator's objections, in essence, repeat the same arguments that were considered and rejected by the magistrate. In State ex rel.Sutherland v. Indus. Comm. (Sept. 25, 1986), Franklin App. No. 85AP-866, this court held a period of incarceration may be considered a special circumstance so that the average weekly wage needs to be calculated by the use of the alternative method of computing such wages. The magistrate correctly found the commission abused its discretion by concluding, without any explanation, that the period of incarceration was beyond claimant's control.
 {¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own and grants a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that set claimant's average weekly wage at $347.40, and to issue a new order that determines claimant's average weekly wage and that meets the requirements of Noll, including an explanation as to whether or not the incarceration of the claimant was or was not beyond his control and sets forth the evidence cited in support of that conclusion.
Objections overruled, writ of mandamus granted.
 Lazarus, P.J., and Deshler, J., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Exel Logistics, Inc.,: :
Relator, : :
v. : No. 03AP-456 :
Industrial Commission of Ohio : (REGULAR CALENDAR) :
and Thomas A. Harper, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on October 28, 2003 Reminger Reminger Co., LPA, and Paulette M. Ivan, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Brown, Lippert, Heile Evans, and Michael E. Thomas, for respondent Thomas A. Harper.
 IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Exel Logistics, Inc. ("Exel"), asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order setting claimant's average weekly wage ("AWW") at $347.40 and to issue a new order setting a lower AWW.
Findings of Fact:
 {¶ 6} 1. On November 11, 2000, Thomas A. Harper ("claimant") sustained an industrial injury while employed by Exel, and his workers' compensation claim was allowed for conditions of the lumbar back, right shoulder, and right knee.
 {¶ 7} 2. In September 2001, claimant filed a motion requesting that his AWW be set at $347.40. He submitted evidence that, in the 52 weeks prior to his injury, he was incarcerated for the first 26 weeks. He then spent four weeks actively looking for work. He was hired by Millikins Millworks, where he worked for three weeks, after which he was hired by Exel. However, due to Exel's preemployment screening process, claimant did not begin work for two weeks. Claimant then worked for Exel for 16 weeks before he was injured in November 2000. During that 16 weeks, there was one week when claimant did not draw wages.
 {¶ 8} 3. In January 2000, a district hearing officer ("DHO") granted claimant's motion and set the AWW at $347.40. The employer appealed.
 {¶ 9} 4. In April 2000, a staff hearing officer ("SHO") held:
The Staff Hearing Officer further finds that the claimant's average weekly wage was properly set at $347.40 based on the claimant's gross wages of $6,600.74 earned in the year prior to this injury for 29 weeks worked. The Staff Hearing Officer findsthat the 33 weeks that the claimant was unemployed in the yearprior to injury were for reasons beyond his control. Therefore, pursuant to ORC 4123.61, 33 weeks are eliminated from the calculation on that basis.
This order is based on the medical reports and records of Dr. Shybut and the wage information in file.
(Emphasis added.)
 {¶ 10} 5. Further appeal was denied.
Conclusions of Law:
 {¶ 11} The employer challenges the commission's final order as set forth in the April 2000 decision of the SHO. For the reasons set forth below, the magistrate concludes that the SHO order constitutes an abuse of discretion and that a limited writ of mandamus should be issued.
 {¶ 12} Calculation of the AWW is governed by R.C. 4123.61, which states:
* * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial de-pression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 13} Under the standard formula in the first paragraph of R.C. 4123.61 as quoted above, the commission totals the wages for the 52 weeks before the injury and divides that total by 52, excluding unemployment beyond the control of the worker. The second paragraph provides, however, that the standard formula is not used where its application would be unjust under the particular circumstances. Under R.C. 4123.61, when "special circumstances" are found, the commission may adopt a different method of calculation. The overriding principle is to do substantial justice to the claimant while not providing a windfall. State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286. See, also, State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112.
 {¶ 14} Several courts have addressed the situation where a worker is injured shortly after beginning a new job. Even where the period of unemployment before the new job was voluntary, the worker may qualify for the "special circumstances" exception, depending on the circumstances. In Riley v. Indus. Comm.
(1983), 9 Ohio App.3d 71, an employee began a full-time job after a period during which he chose not to work due to other income. After returning to the labor market, he was injured after three weeks at the new job. The evidence indicated, however, that the injured worker would have continued to be employed in his job and would have continued to earn his same salary. The court found "no indication that relator did not intend to work regularly in the future." Id. at 72.
 {¶ 15} The court concluded that the "total circumstances" indicated that the commission abused its discretion by dividing three weeks of earnings by 52 weeks. The court explained that basing claimant's AWW on 48 weeks of unemployment was "obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work." Id. at 73.
 {¶ 16} In State ex rel. Sutherland v. Indus. Comm. (Sept. 25, 1986), Franklin App. No. 85AP-866, the claimant obtained employment on release from prison but was injured after four days on the job. In regard to the first paragraph of R.C. 4123.61, this court held that claimant's period of incarceration was not beyond his control so as to be eliminated from the standard calculation. However, in regard to the second paragraph of R.C.4123.61, the court determined that the period of incarceration was a special circumstance that justified the use of an alternative method of computing claimant's AWW. The court relied on Smith v. Indus. Comm. (1986), 25 Ohio St.3d 25, for the proposition that, while a period of unemployment might not be excludable from the standard calculation, it could nonetheless involve present "special circumstances" under which the AWW could not be justly determined by using the standard formula.
 {¶ 17} In the present action, claimant was injured shortly after returning to the labor market. During the 52 weeks prior to his injury, claimant had been unemployed for the first 26 weeks because he was incarcerated. Violation of the law is not ordinarily beyond a person's control, given the element of intent and/or knowledge in the criminal law. Accordingly, unemployment caused by incarceration is not usually beyond a person's control. See Sutherland, supra; see, generally, State ex rel. Ashcraftv. Indus. Comm. (1987), 34 Ohio St.3d 42. In contrast, when a claimant presents evidence that he was actively looking for work but was unable to secure a job, the commission may conclude that the unemployment was beyond claimant's control.
 {¶ 18} In the present action, the commission was within its discretion to conclude that the weeks of unemployment while looking for work were beyond claimant's control and excludable in a calculation under the standard formula. Likewise, the commission could conclude that the unemployment while waiting for the employer to complete its screening were beyond claimant's control. However, a substantial part of the employment was caused by incarceration, and the commission abused its discretion in concluding, without explanation or citation of evidence in support, that the period of incarceration was beyond claimant's control.
 {¶ 19} Nonetheless, under the "special circumstances" exception, the commission may exclude periods of unemployment that were plainly within the claimant's control, such as a period of unemployment based on personal choice or caused by violation of the criminal law. See, e.g., Riley; Sutherland.
Under the "special circumstances" exception, the commission may consider all the circumstances and fashion a method of calculation that will do substantial justice.
 {¶ 20} In the order at issue, the SHO excluded all the unemployment as involuntary unemployment under the standard formula; however, as set forth above, the SHO failed to explain how the incarceration was beyond claimant's control and failed to cite evidence in support of that finding. Thus, a limited writ is warranted. See, generally, State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203.
 {¶ 21} The magistrate declines to recommend that the commission be ordered to adopt or reinstate the DHO's order. Under the "special circumstances" exception, the commission has broad discretion to fashion an appropriate method for calculating the AWW, and there may be several methods that would be within the commission's discretion. Accordingly, the magistrate recommends that this court issue a limited writ, returning this matter to the commission to vacate the SHO order with respect to the AWW determination and to issue a new SHO order, setting the AWW in compliance with the above-listed authorities.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE